## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **DR. RUTH C. MAY AND DR. DONNA E. LEDGERWOOD, on behalf of themselves and all other similarly situated,** | |
| *Plaintiffs,* | Cause No. _____ |
| **v.** | |
| **BARCLAYS PLC AND BARCLAYS BANK PLC,** | |
| *Defendants.* | |

## ORIGINAL CLASS ACTION COMPLAINT

### I.

### SUMMARY OF THE ACTION

Plaintiffs Dr. Ruth C. May and Dr. Donna E. Ledgerwood bring this nationwide class action under Rule 23 of the Federal Rules of Civil Procedure against Defendants Barclays PLC and Barclays Bank PLC for violating the securities laws of the United States by selling unregistered securities.

### II.

### PARTIES

1.      Plaintiff Dr. Ruth C. May ("May") is an individual citizen of the state of Texas.

2.      Plaintiff Dr. Donna E. Ledgerwood ("Ledgerwood") is an individual citizen of the state of Texas.

3.     Defendant Barclays PLC is a bank holding company headquartered in London, United Kingdom. Through its subsidiaries, it provides various financial services, including investment banking, wealth management, and the offer and sale of securities in this district. Barclays PLC has registered the common shares underlying its American Depository Receipts, which trade on the New York Stock Exchange. It has an obligation to file periodic reports with the Commission pursuant to Section 13(a) of the Exchange Act.

4.     Defendant Barclays Bank PLC (together with Barclays PLC, "Barclays" or "Defendants") is a global bank headquartered in London, United Kingdom, and a wholly-owned subsidiary of Barclays PLC. It provides various financial services, including the offer and sale of securities in this district. Barclays Bank PLC has listed a series of corporate debt securities on U.S. exchanges, each class of which has been registered with the Commission pursuant to Section 12(b) of the Exchange Act. It has an obligation to file periodic reports with the Commission pursuant to Section 13(a) of the Exchange Act.

### III.

### JURISDICTION & VENUE

5.     This Court has federal subject matter jurisdiction under 15 U.S.C. § 77v and under 28 U.S.C. §§ 1331, 1332, 1367(a).

6.     There is complete diversity of the parties, the amount in controversy exclusive of interest and costs exceeds $75,000, at least one member of the proposed class is diverse from at least one defendant, and the total amount in controversy for the class exceeds $5,000,000.

7.     Venue is proper in, and Defendants are subject to, the personal jurisdiction of this Court because Defendants transact business in this district, otherwise maintain facilities and business operations in this district, and a substantial part of the events or omissions giving rise to

Plaintiffs' claims occurred in this District. *See* 15 U.S.C. § 77v, 28 U.S.C. § 1391(b); 42 U.S.C. § 2000e-5(f)(3).

## IV.

## BACKGROUND FACTS

8.    In a September 29, 2022 SEC Consent Order, Barclays admitted (for purposes of those proceedings) that it had issued $17.7 billion worth of unregistered securities. *See* Order at https://www.sec.gov/litigation/admin/2022/33-11110.pdf.   Included   among   them   were   the Barclays Bank PLC iPath Series B S&P 500 VIX Short-Term Futures ETN (VXX).

### A.  THE BEGINNING: BARCLAYS LOSES ITS STATUS AS A FREQUENT FILER

9.    For years, Barclays was a "well known seasoned issuer" ("WKSI") of securities.

10.    As such, Barclays was able to issue securities by filing an open-ended shelf registration statement. Whenever Barclays wanted to issue securities, all it had to do was pay the registration fee, file the proper papers, and the securities were deemed "effective" upon issuance. No prior SEC review was otherwise necessary.

11.    SEC Rule 405 and Instruction I.A on Form S-3 set forth the requirements for being a WKSI. However, under Rule 405, one can lose WKSI status in a variety of ways—including having been found liable for securities fraud in the prior three years. Having that happen makes one an "ineligible issuer".

12.    On May 10, 2017, the SEC instituted settled public administrative and cease-and-desist proceedings against Barclays Capital Inc.—a subsidiary of Barclays. *In the Matter of Barclays Capital Inc.*, Adm. Proc. File No. 3-17978 (May 10, 2017), Barclays settled with the SEC for $97 million for violations of the anti-fraud provisions of the Exchange Act and of the Advisers

Act (15 U.S.C. § 206) related to mutual fund fees. https://www.sec.gov/litigation/admin/2017/33-10355.pdf.

13.     Prior to these proceedings, Barclays had been able to retain its WKSI status because the SEC had issued WKSI waivers to Barclays, but the SEC refused to grant Barclays another waiver after the May 2017 settlement.

14.     Thus, Barclays lost its status as a WKSI.

15.     Previous to this point, as a WKSI, and because of the lack of real formalities and the lack of any cap on the number of securities it could issue under blanket shelf registrations, Barclays had no need to track the number of securities it issued. This was all about to change.

16.     As a non-WKSI, Barclays was required to define and designate the number of securities it planned to register and issue, and pay the registration fee up front.

17.     In 2018 Barclays filed a shelf registration for over $21.3 billion (the "2018 Shelf Registration"). In 2019 Barclays filed a shelf registration statement registering an additional $20.7 billion worth of securities that could be sold over the ensuing three years (the "2019 Shelf Registration").

18.     The SEC requires an issuer like Barclays to have robust internal controls in place to ensure that it does not issue unregistered securities. Barclays is required to keep track of the securities it is selling, and then file a new registration statement and pay an additional  fee whenever it exhausts  the volume of securities covered by a prior shelf registration.

19.     Barclays was aware of this obligation in 2018. Indeed, it created a working group to track in real time the securities sold under the 2018 Shelf Registration and the 2019 Shelf Registration. But no one was actually tracking the sales, and no internal controls were set in place to accomplish that.

4

20.     According to the SEC's *Order Instituting Cease-And- Desist Proceedings Pursuant to Section 8a of The Securities Act of 1933 And Section 21c of The Securities Exchange Act of 1934, Making Findings, And Imposing A Cease-And-Desist Order*:

> On March 8, 2022, a member of Group Treasury reached out to the member of the legal department who had been part of the Working Group, inquiring as to how many securities remained available to be offered and sold off of the 2019 Shelf because Group Treasury was planning on doing a sale of corporate debt securities.
>
> Over the course of that day and the next, various [Barclays] personnel attempted to calculate the cumulative amount of securities offered and sold from the 2019 Shelf in order to determine the amount of securities that remained available for sale. Over the course of these efforts, it became clear to all involved that there was no internal control in place to track in real time the amount of securities offered and sold against the amount of securities registered.
>
> On or around March 9, 2022, [Barclays] personnel concluded that securities had been offered and sold in excess of what had been registered on the 2019 Shelf. Shortly thereafter, [Barclays] halted new offers and sales of securities from the 2019 Shelf and, on March 14, 2022, alerted regulators about the over-issuance and disclosed to the market that [Barclays] did not have sufficient issuance capacity to support further sales from inventory and any further issuances of certain ETNs.

https://www.sec.gov/litigation/admin/2022/33-11110.pdf (the "SEC Order").

21.     The SEC Order further explicates that:

> At the time of the registration of both the 2018 Shelf and the 2019 Shelf, certain [Barclays] personnel recognized the need to accurately record relevant information about securities that were offered or sold so as to be able to track the aggregate amount of securities that were cumulatively offered and sold from each respective Shelf on a real-time basis, thereby ensuring that [Barclays] did not offer or sell any securities in excess of what had been registered. No internal control was established to address this issue, and the amount of securities that were offered and sold was not tracked.
>
> . . . [B]eginning on or around June 26, 2019, [Barclays] offered and sold securities in excess of the amount remaining on the 2018 Shelf, ultimately leading to [Barclays] offering and selling approximately $1.3 billion of securities in excess of what was registered with the Commission on the 2018 Shelf. *Id.*

22.     The SEC Order further concluded that:

> In addition, due to its failure to establish any internal control to track the amount of securities that were offered or sold on a real-time basis, beginning on or around January 28, 2021, [Barclays] offered and sold securities in excess of what was registered on the 2019 Shelf. These over-issuances continued until on or around March 9, 2022, when [Barclays] discovered this issue. Over the 14-month period of over-issuance, [Barclays] offered and sold approximately $16.37 billion of securities in excess of what was registered with the Commission on the 2019 Shelf.
>
> On March 14, 2022, [Barclays] reported the issue to regulators and disclosed to the market that [BARCLAYS] did not have sufficient issuance capacity to support further sales from inventory and any further issuances of certain exchange-traded notes ("ETNs"). *Id.*

23.     Barclays paid the SEC penalties of $200,000,000 and disgorgement of $149,731,011 with pre-judgment interest.

24.     Nothing in the SEC Order or any other filing suggested that the unregistered securities were somehow ripe for trading.

25.     On August 1, 2022, Barclays commenced a rescission offer for all securities that had been issued without the proper registration statement (the "Securities"). The offer expired on September 12, 2022.[1] The offer included an itemized list of the purported Securities that qualified for a rescission claim.

26.     As part of its efforts to resolve the SEC proceedings, Barclays identified the over-issuances from the 2018 and 2019 Shelf Registrations, and it agreed to maintain auditable data. However, the rescission offer  made it clear that those who purchased exchange traded notes, or "ETNs," would likely not be given any relief under the offer.

27.     The totality of the allegations and facts in the SEC Order and Barclays Rescission Offer are incorporated herein by reference.

---

[1] https://www.sec.gov/Archives/edgar/data/312070/000119312522207620/d386666d424b5.htm.

**B. PLAINTIFFS INVEST IN BARCLAYS "VXX" ETNS.**

28.     From her rollover IRA account, Plaintiff May purchased 1,000 shares of Barclays Bank PLC iPath Series B S&P 500 VIX Short-Term Futures ETN on March 17, 2021, at a purchase price of $12.6389 ($12,638.90 total). May also purchased 850 shares on April 1, 2021, at $11.005 per share ($9,354.25 total), and 6 shares on June 4, 2021, at $33.3681 per share ($200.21 total). From her Roth IRA account, May purchased 750 shares on July 13, 2020, at $35.2177 per share ($26,413.28 total), 280 shares on October 19, 2020, at $23.0674 per share ($6,458.87 total), 1,000 shares on March 19, 2021, at $12.9495 per share ($12,949.50 total), 85 shares on April 1, 2021, at $11.035 per share ($937.98 total), 1,250 shares on April 12, 2021, at $10.2258 per share ($12,782.25 total), and 815 shares on June 4, 2021, at $33.3537 per share ($27,183.27 total).

29.     From her rollover IRA account, Plaintiff Ledgerwood purchased 1,500 shares of Barclays Bank PLC iPath Series B S&P 500 VIX Short-Term Futures ETN on May 22, 2020, at a purchase price of $34.575 per share ($51,862.50 total). Ledgerwood also purchased 1,500 shares on July 13, 2020, at a purchase price of $34.48 per share ($51,720.00 total), 4,000 shares on August 10, 2020, at $25.845 per share ($103,380.00 total), 3,000 shares on October 19, 2020, at $23.0768 per share ($69,230.40 total), 5,000 shares on December 21, 2020, at $18.526 per share ($92,630.00 total), 2,500 shares on February 8, 2021, at $16.375 per share ($40,937.50 total), 3,500 shares also on February 8, 2021, at $16.3796 per share ($57.328.60 total), 10,000 shares on April 1, 2021, at $11.0392 per share ($110,392.00 total), and 400 shares on June 4, 2021, at $33.3385 per share ($13,335.40 total).

30.     Plaintiffs' shares were then reissued under a new CUSIP in a one-for-four reverse split on April 23, 2021, after the June 26, 2019 and January 28, 2021 dates when Barclays had exhausted the securities available from the 2018 Shelf and the 2019 Shelf. On a split-adjusted

basis, Barclays Bank PLC iPath Series B S&P 500 VIX Short-Term Futures ETN traded at $22 per share one month after the close of the Barclays Recission Offer on September 12, 2022. The shares hit a new low of $10.71 on March 6, 2023, one day prior to undergoing another one-for-four reverse split.

31.     Plaintiff May attempted to take advantage of the rescission offer by properly submitting nine separate claims to the Barclays portal well in advance of the stated deadline. Plaintiff Ledgerwood followed the same process and submitted nine claims to the Barclays portal several days prior to the cutoff. On September 17, 2022, Plaintiffs May and Ledgerwood received identically worded emails, one for each claim submitted, notifying them that all of their claims had been rejected.

32.     Plaintiffs believe that discovery will allow them to trace their shares to Barclays internal documents, and an analysis will show which ETNs were sold without a valid registration statement. However, Barclays has not published the information.

33.     Barclays admitted that its staggering-in-scope violation of securities laws is the result of its failure to put into place any internal controls around the real-time tracking of securities being offered or sold off of its 2018 and 2019 Commission-registered Shelf Registration statements. For a great read that describes the significance of Barclays' admission, see Matt Levin's "Barclays Lost Track of Its Notes," Bloomberg, October 4, 2022.

34.     Plaintiffs did not discover and, by the exercise of reasonable diligence, could not possibly have discovered that the shares they purchased were unregistered before, at the very earliest, March 28, 2022. Moreover, the shares they purchased were neither sold nor bona fide offered to the public more than three years before the filing of this action.

## V.

## CAUSES OF ACTION

### COUNT I
**(Rescission/Disgorgement for Violations of Section 5 of the Securities Act of 1933)**

1.      Plaintiffs incorporate all factual allegations as if fully set forth herein.

2.      Plaintiffs seek rescission and compensation for the Securities, which were sold without a proper and effective registration statement in violation of Section 5 of the Securities Act.

3.      The Securities are void because they were sold without an effective registration statement, and no exemption from registration was in effect.

4.      Because the securities issuances are void, Plaintiffs are entitled to equitable rescission as direct purchasers or as assignees or transferees.

### COUNT II
**(Violations of Section 11 of the Securities Act of 1933)**

5.      Plaintiffs incorporate all factual allegations as if fully set forth herein.

6.      Plaintiffs seek compensation for the Securities sold pursuant to a defective registration statement pursuant to Section 11 of the Securities Act of 1933 (15 U.S.C. § 77k).

7.      Plaintiffs purchased Securities pursuant to the 2018 and/or 2019 Shelf Registrations which were deficient in that they did not cover the issued Securities.

8.      The 2018 and 2019 Shelf Registrations included material misrepresentations. To wit, on February 22, 2018, Barclays filed a registration statement with the SEC for its 2018 shelf statement, which was declared effective on March 30, 2018, and included a specification of the maximum aggregate offering price of securities available to be offered or sold off that registration statement. On June 14, 2019, Barclays filed a registration statement with the SEC for its 2019 shelf statement, which was declared effective on March 3, 2019, and included a specification of the

maximum aggregate offering price of securities available to be offered or sold off that registration statement.

Both registration statements falsely stated the aggregate amount of securities intended to be registered and sold. Both registration statements omitted the material fact of the true amount to be issued and/or that no internal controls were in place around the real-time tracking of securities being offered or sold off them.

9. Plaintiffs purchased or held Securities that were or should have been covered by these registration statements and that were required to be registered.

10. On information and belief, these Securities—or alternatively many of them—can be traced back to the initial offering and/or to Securities sold after the amounts listed in the registration statements had been exceeded.

11. Barclays Bank PLC is the issuer of the Securities and is therefore liable, and Barclays PLC is the control person and is therefore liable under Section 15 of the Securities Act.

12. Plaintiffs and the Class are entitled to rescission and/or rescissionary damages under Section 11.

13. Plaintiffs have since sold their Securities, many of them at a loss. Or, alternatively, Plaintiffs tender them to Barclays.

## COUNT III
### (Violations of Section 12 of the Securities Act of 1933)

14. Plaintiffs incorporate here the preceding paragraphs and counts of this Complaint as if fully set forth herein.

15. The Securities purchased by Plaintiffs and the Class were required to be registered under Section 12.

16.     Plaintiffs and the Class are entitled to damages, rescission and/or rescissionary damages under Section 12.

## VI.

## CLASS ACTION ALLEGATIONS

17.     Plaintiffs bring this action under Rule 23(b)(3) of the Federal Rules of Civil Procedure and seek to represent themselves and a class of similarly situated investors (the "Class").

18.     The class period shall be on or between June 26, 2019, and March 14, 2022, inclusive (the "Class Period").

19.     The Class shall be defined as:

> All purchasers of the Securities during the Class Period. Excluded from the Class are (1) Defendants, their corporate parents, subsidiaries, affiliates, and officers, directors, agents, representatives, and assigns of any of the foregoing, (2) any entity which is controlled by any of the foregoing, (3) any successful claimants under the Barclays Bank PLC Rescission Offer, and (4) Plaintiffs' attorneys, their employees, and immediate family members (hereinafter, the "Class").

20.     Because Barclays' relevant acts and omissions were uniform and affect Class members uniformly throughout the United States, Plaintiffs seek certification of a nationwide class under Rule 23(b)(3) and/or Rule 23(b)(2).

21.     Numerosity/Impracticability of Joinder: The Class members are so numerous that joinder of all members would be impractical. The proposed Class likely includes thousands of members, but it will require information solely in the possession of the Defendants to identify them.

22.     Commonality and Predominance: There are common questions of law and fact that predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

a.  Whether and when Defendants sold unregistered Securities;

b.  Whether the Securities were required to be registered under Section 5 of the Securities Act of 1933 (the "Securities Act");

c.  Whether sales of the Securities were the result of Defendants' failure to put in place reasonable internal controls;

d.  Whether sales of the Securities violated Sections 5, 11 and 12 of the Securities Act;

e.  Whether such failure was intentional, reckless, and/or negligent;

f.  Whether the Class is entitled to rescission and/or other relief.

23.     Typicality: Plaintiffs' claims are typical of the claims of the Class members. Plaintiffs' claims arise out of violations of the same laws and duties and out of Defendants' uniform acts and omissions. Under applicable law, the Securities' issuances are void ab initio for the same reason(s) that Plaintiffs' Securities issuances are void. Once deemed void, Plaintiffs and the absent Class members are entitled to all the incidences of voidness, including rescission.

24.     Adequacy: Plaintiffs will be adequate Class representatives and will fully and adequately assert and protect the interests of the Class. They have retained experienced and qualified counsel, and they do not have conflicting interests with other Class members.

25.     Superiority: A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all Class members is economically unfeasible and procedurally impractical. While the aggregate of dollars at stake is large, many members have relatively small sums at stake and would not have a significant interest in individually controlling the prosecution of a separate action or a significant financial motivation to incur the necessary expense that would be involved. Moreover,

individualized litigation would likely result in varying, inconsistent, or contradictory judgments and unnecessarily magnify the delay and expense to all the parties and the court system due to the necessity of multiple trials regarding the same factual and legal issues. Further, Plaintiffs do not anticipate any difficulty in managing this litigation.

26.     Notice: Upon information and belief, Plaintiffs allege that Defendants have, or have access to, addresses, phone numbers, e-mail addresses, and other contact information for members of the proposed Class, which may be used for the purpose of providing notice of the pendency of this action.

## VII.

## JURY DEMAND

27.     Plaintiffs demand a jury trial of all issues so triable.

## VIII.

## PRAYER FOR RELIEF

28.     Plaintiffs pray for the following relief:

a.     Class certification under Rules 23(a), 23(b)(3) and 23(b)(2) on behalf of the Class as defined above;

b.     Certification of Plaintiffs as Class representatives and appointment of Plaintiffs' counsel as lead counsel for the Class;

c.     Equitable relief in the form of rescission or rescissionary damages with respect to Plaintiffs' and the Class's purchases of the Securities;

d.     An award of compensatory damages in favor of Plaintiffs and the Class against Defendants, jointly and severally, for all losses

sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including pre-judgment and post-judgment interest thereon;

e.      An award in favor of Plaintiffs and other members of the Class of their costs and expenses in this litigation, including reasonable attorneys' fees, experts' fees, and other costs and disbursements; and,

f.      All other relief to which Plaintiffs may be entitled at law or in equity.

Dated: March 27, 2023

**SBAITI & COMPANY PLLC**

*/s/ Mazin A. Sbaiti*

**Mazin A. Sbaiti**
New York Bar No. 4339057
2200 Ross Avenue – Suite 4900W
Dallas, TX  75201
T: (214) 432-2899
F: (214) 853-4367
E: mas@sbaitilaw.com

***COUNSEL FOR PLAINTIFFS***

14