UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DR. RUTH C. MAY, DR. DONNA E. LEDGERWOOD, JUSTIN REED, MARK HOWARTH and JEFFREY KNAPP, *on behalf of themselves and all others similarly situated*,<br><br>　　　　　　　　　Plaintiffs,<br>　　v.<br><br>BARCLAYS PLC, BARCLAYS BANK PLC, JAMES E. STALEY, TUSHAR MORZARIA, STEVEN EWART, C.S. VENKATAKRISHNAN, TIM THROSBY, ANNA CROSS, NIGEL HIGGINS, ALEX THURSBY, HELEN KEELAN, HÉLÈNE VAN DORT, JEREMY SCOTT, MARIA RICHTER, and DOES 1-12,<br><br>　　　　　　　　　Defendants. | Case No: 23-cv-2583 (LJL) |

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION FOR RECONSIDERATION**

On March 21, 2025, the Court granted Defendants' Motion to Dismiss and dismissed this action with prejudice. Lead Plaintiffs respectfully submit this Motion for Reconsideration and ask the Court to revisit its conclusion with regard to a single fact issue and, consequently, the effect of that conclusion on two of Plaintiffs' claims. For the reasons that follow, Plaintiffs ask the Court to reinstate their Section 11 and Section 12 claims or, in the alternative, grant Plaintiffs leave to amend.

**A. THE APRIL 23, 2021, PRICING SUPPLEMENT IS A NEW REGISTRATION STATEMENT**

Plaintiffs first ask the Court to reconsider its conclusion that Barclays' April 23, 2021, Pricing Supplement does not constitute an initial offering or attempted registration of the VXX

1

ETNs issued that same date via the reverse split. *See* Op. & Order (Doc. 96) at 31-32 & n.18. This argument—that the pricing supplement was not in relation to the reverse split—was raised for the first time in Barclays's Reply Brief (Doc. 88) at 13, and Plaintiffs' only opportunity to address the argument came at oral argument.

For the following reasons, Plaintiffs respectfully submit that the post-split ETNs—which were issued with a new and unique CUSIP number and are therefore easily identified—were first registered in the April 23, 2021, pricing supplement. 2d Amend. Compl. (Doc. 80) ¶¶ 233, 255.

*First*, the post-split ETNs match the volume referenced in the April 23, 2021, Pricing Supplement.

*Second*, the reverse split ETNs were issued under the CUSIP number 06747R477, and it is undisputed that (a) the subsequent issuances of VXX on May 3, 2021, and October 22, 2021, were also issued under that same CUSIP number, and (b) that the April 23, 2021, Pricing Supplement is the first time VXX ETNs were registered under that new CUSIP number.

*Third*, it is clear that the April 23, 2021, Pricing Supplement was *not* related to future VXX sales or issuances. For one thing, Barclays filed a new Pricing Supplement on April 30, 2021, regarding the May 3, 2021, issuance of VXX, and another on October 21, 2021, for the October 22, 2021, VXX issuance.[1] Therefore, the April 23, 2021, Pricing Supplement could only have one purpose: registering the ETNs in the reverse split.

*Fourth*, when retrieved from EDGAR, the Pricing Supplement displays a header on the April 23, 2021 Pricing Supplement labeling the filing, "IPATH - VXX Reverse Split."[2] This indicates that Barclays itself believed, at the time it filled out the fields for electronic filing, that

---

[1] Exs. 1 and 2, Apr. 30, 2021, and October 21, 2021, Pricing Supplements. The Court can take judicial notice of these SEC filings, which are referenced in the pleadings.

[2] Ex. 3, Apr. 23, 2021, Pricing Supplement.

this prospectus concerned the offering of ETNs that same day for the reverse split, not future sales going forward.

It is not at all surprising Barclays would have said this given that SEC Rule 416(b) requires, except in circumstances not relevant here, that an issuer must file a post-effective amendment and register securities issued in a reverse split. 17 C.F.R. § 230.416(b) ("If paragraph (a) of this section is not applicable, the registration statement shall be amended prior to the offering of such additional or lesser amount of securities to reflect the change in the amount of securities registered.").

Importantly, the effect of the Pricing Supplement, as required by 17 C.F.R. § 229.512 and the 2019 shelf registration statement's undertakings,[3] is that a **new registration statement** exists as of the date of the Pricing Supplement's filing. In fact, the Opinion and Order's quote from this section of the regulations stops right before the salient sentence:

> For the purpose of determining any liability under the Securities Act of 1933, each post-effective amendment that contains a form of prospectus ***shall be deemed to be a new registration statement*** relating to the securities offered therein, and the offering of such securities ***at that time*** shall be ***deemed to be the initial bona fide offering*** thereof.

17 C.F.R. § 229.512(i)(2) (emphasis added); ***but*** see Op. & Order (Doc. 96) at 32 n.18 (indicating erroneously that the ETNs were "issued pursuant to a prior registration statement" even though they were actually issued under what was deemed to be a new registration statement upon that very date for purposes of liability under the 1933 Act).

Indeed, there are several reasons, under 17 C.F.R. § 229.512 and Barclays' undertakings that the pricing supplement must be deemed a new registration statement. Among them, an "increase or decrease in volume of securities offered" representing a more than a "20% change in

---

[3] *See* Barclays Bank PLC, Form F-3 Registration Statement (June 14, 2019), at II-9 to II-10.

the maximum aggregate offering price," *id.* § 229.512(a)(1)(ii), the existence of "material information with respect to the plan of distribution not previously disclosed," *id.* § 229.512(a)(1)(iii), and the use of a Rule 424 prospectus in connection with the offering, *id.* § 229.512(a)(6)(i). All of these are true here—each Pricing Supplement is, by its own terms, "Filed Pursuant to Rule 424(b)(2)."

B. **PLAINTIFFS' SECTION 11 CLAIM SHOULD THEREFORE HAVE SURVIVED**

Because Plaintiffs acquired ETNs with a unique CUSIP, all of which are traceable to the new registration statement deemed to exist upon the filing of the April 23, 2021, Pricing Supplement, Plaintiffs plainly have standing to contest that registration statement's defects under Section 11.

But the existence of a new registration statement does more than just enable tracing. It also creates a new as-of date for the representations in the registration statement that it updates. Thus, Plaintiffs need not allege that Barclays' statements in the 2019 shelf registration statement were knowingly or recklessly false in 2019. It is enough for Section 11 that those statements—which are deemed part of the new registration statement—were false as of April 23, 2021. And they obviously were. The same is likewise true of statements in the other prospectuses incorporated into the registration statement.

When viewed through the lens of April 2021 rather than July 2019, the statements itemized in Plaintiffs' response brief (Doc. 87 at 10-16) are patently false. Chief among them:

- "The Securities [VXX], and any other Securities of this series and of like tenor, are issuable only in registered form without coupons in denominations as specified on the face hereof." 2d Am. Compl. at ¶ 153.

- "Unless otherwise specified in the applicable pricing supplement, your note will be issued: in registered form, without interest coupons; in authorized denominations of $1,000 (or the specified currency equivalent) and integral

4

> multiples thereof; and in book-entry form, represented by a global note or a master global note." July 18, 2016, Prospectus Supplement (which accompanies and is incorporated into the July 23, 2019 Pricing Supplement, Exhibit 1 to Defendants' Motion) at S-4.

- "Pursuant to Rule 415(a)(6) under the Securities Act, this registration statement will include $25,000,000,000 in maximum aggregate offering price . . . ." 2d Am. Compl. at ¶ 111.

Because Plaintiffs alleged that they "acquired"[4] their ETNs during the reverse split, receiving the newly issued ETNs with the new CUSIP, all of the ETNs held by Plaintiffs as of April 23, 2021, and going forward can be traced to the registration statement deemed to be new on that date.[5] And because false statements were incorporated into that registration statement (and the subsequent ones as noted above), Plaintiffs respectfully submit that dismissal of their Section 11 claim was improvidently granted and should be reconsidered.

## C. PLAINTIFFS' SECTION 12(a)(1) CLAIM SHOULD ALSO SURVIVE

Plaintiffs also ask the Court to reconsider its conclusion that the April 23, 2021, reverse split is not a sale under the 1933 Act. They respectfully submit that, under 17 C.F.R. § 229.512 and Barclays' undertakings, the reverse split must be "deemed to be the initial bona fide offering" of the ETNs Plaintiffs obtained in the split for the same reasons that a new registration statement is deemed to be created on that date.

Plaintiffs further submit that the Court's reliance on an option analogy for concluding otherwise—an analogy which the parties have not previously had the opportunity to brief—is

---

[4] 15 U.S.C. § 77k(a) (standing exists for "any person acquiring such security…"). The term "sale" is not in Section 11.

[5] *Freedman v. Value Health, Inc*., 190 F.R.D. 33, 35 (D. Conn. 1999) (holding that a stock for stock merger qualified for the "damages calculus under § 11" and the plaintiff's "[r]ecovery is based on the market price of the shares used as currency in the merger"); 5 Disclosure & Remedies Under the Sec. Laws § 3:88 ("in a merger, the 'amount paid' by the stockholders of the disappearing merger partner is the market price (not the intrinsic value) of the disappearing merger partner's shares").

unjustified. While it is accurate to say that an option is not ***necessarily*** a sale when exercised, for the reasons explained by the authorities referenced in the Court's Opinion and Order (Doc. 96), it is incorrect, Plaintiffs submit, to conclude that an option to force a sale is not a sale when forced. To argue otherwise would be to engage in doublespeak.

Stated differently, if the VXX reverse split is viewed as an option, it would be as a purchase-and-sale option, not an option of just any kind. To be sure, Barclays maintained the ability to reclaim the outstanding VXX ETNs at any time rather than awaiting their maturity. And it could reclaim the ETNs either by electing to redeem them early for cash or by exchanging them, in a reverse split, for newly issued securities.[6] But by its very nature, this arrangement is an option to transact, not a mere one-sided election. Thus, Barclays must elect ***and*** contribute consideration in order to make its election effective.[7]

Under the 1933 Act, a disposition of securities for value is a sale.[8] And courts have held that the definition of sale is broader than what is used in commercial contexts.[9] Here, Barclays issued the new securities to Plaintiffs in return for pre-split ETNs and/or cancelation of Barclays' obligations under them. Thus, Barclays received value in return for the disposition.

Moreover, Barclays has never contended that the reverse split does not constitute a disposition of securities. It only ever argued that the disposition was not "for value." But plainly

---

[6] Ex. 3 at PS-39 to 40 (addressing reverse splits) & PS-43 to 44 (addressing issuer-initiated early redemption).

[7] Thus, to exercise its option, Barclays had to make the same kind of decision and execute a similar sort of transaction to what the Second Circuit determined would amount to a sale under the 1934 Act providing the price is not fixed. *See Magma Power Co. v. Dow Chem Co.*, 136 F.3d 316, 321-22 (2d Cir. 1998); *see also Plantation Key Devs. Inc., v. Colonial Mortg. Co. of Ind., Inc.*, 589 F.2d 164, 168 (5th Cir. 1978) ("Both the option and the underlying contract must be supported by consideration.").

[8] *Rubin v United States*, 449 U.S. 424, 429 (1981) (citation omitted); *Catalyst Lifestyles Sport Resort, LLC v. Sherrard*, No. 2:18-CV-302-HAB, 2019 U.S. Dist. LEXIS 86036, at *14-15 (N.D. Ind. May 22, 2019) (collecting definitions of "dispose"); *Rome I, Ltd. v. Commissioner*, 96 T.C. 697, 703-04 (1991) (determining ordinary meaning of "disposition").

[9] *Fidelis Corp. v. Litton Indus., Inc.*, 293 F. Supp. 164, 169-70 (S.D.N.Y. 1968) (citing *Dasho v. Susquehanna Corp.*, 380 F.2d 262, 266 (7th Cir. 1967) (holding that statutory definition "indicates an intention by Congress that the words 'purchase' and 'sale' are not limited to transactions ordinarily governed by the commercial law of sales")).

both the old ETNs and the new ones had measurable market value—precisely what this Court meant when it called the transaction a "forced exchange of an ***economic interest***." Opinion and Order (Doc. 96) at 29 (emphasis added).[10] Or when it wrote, "For every four shares that an investor held, BPLC would replace it with a single new share ostensibly worth four times the ***value***, and for any fractional shares left over, BPLC would cash them out at a specific calculation roughly equivalent to the indicated ***value***." *Id.* at 9-10 (emphasis added). Further, this is an incomplete statement of the exchange—Plaintiffs, in addition to giving up the lower-priced ETNs, also gave up other economic interests related to liquidity and redeemability. Therefore, the disposition of securities in the reverse split was indeed "for value."

At oral argument, questions from this Court first raised the concern that the "for value" prong of the sale test might require "***new***" value or value that is somehow different in ***amount*** from the value of the security being disposed of. Plaintiffs respectfully submit that the 1933 Act contains no such requirement. But regardless, "new value" is easily demonstrated here. Plaintiffs surrendered pre-split ETNs and, at that time, gave up all rights under them in return for the newly minted VXX ETNs. Complaint ¶¶ 157-58. The post-split ETNs came with similar but not identical rights to those that Plaintiffs gave up in exchange. *Id.* That the value was essentially equivalent on both sides of the ledger (aforementioned liquidity and redeemability issues aside) is neither relevant nor surprising. Roughly equivalent value is the norm in most transactions.

Take for example the standard right-of-first-refusal option in a real estate transaction. Upon exercise of the option, the purchase price must be paid and the deed delivered. The

---

[10] *See Vine v. Beneficial Fin. Co.*, 374 F.2d 627, 634 (2d Cir. 1967) (holding that forcing shareholder to redeem for cash is a "sale"). The Court's reliance on cases where the investor simply received a dividend share in a split, as opposed to having to exchange, seems to suggest that the Court believes that Plaintiffs did not plausibly plead they gave up pre-split VXX ETNs, that Plaintiffs gave nothing up, or that Barclays gained nothing as a result of the reverse split. *But see Freedman v. Value Health, Inc.*, 190 F.R.D. 33, 35 (noting that in a stock swap, the stock given up is "currency" in exchange for the one(s) received).

7

purchaser's right to the deed is thus dependent upon its surrender of the purchase price. That the terms were previously agreed and the transaction can now be forced by the option holder does not render the consideration valueless. Neither would it matter if the purchase price involved an in-kind 1031 exchange under the Internal Revenue Code rather than cash. Were it otherwise, the transaction could be voided for failure of consideration.[11]

The same is true here. Barclays' right to force the transaction does not render valueless Plaintiffs' relinquishment of the right to payment under the surrendered ETNs. Those rights had value. And because there was value, Plaintiffs respectfully submit that the reverse split was indeed a sale. Their section 12(a)(1) claim should therefore survive.

### D. AMENDMENTS TO THIS EFFECT WOULD NOT BE FUTILE

To the extent Plaintiffs' arguments here rely on facts this Court deems beyond the pleadings or its ability to take judicial notice, Plaintiffs respectfully request reconsideration of the dismissal with prejudice and seek leave to amend the Complaint. Specifically, Plaintiffs request leave (a) to incorporate Barclays' April 23, 2021, Pricing Supplement referencing the VXX reverse split in its header, (b) to incorporate the other VXX pricing supplements referenced herein, (c) to allege that the post-split VXX ETNs are "deemed" to be related to a new registration statement as of April 23, 2021, and that this date is deemed to be the initial bona fide offering of such ETNs, and (d) to allege that the false statements identified here and in the Complaint were incorporated into that new registration statement and thus repeated as of April 23, 2021. For the reasons stated above, these amendments would not be futile.

---

[11] *See, e.g.*, *Plantation Key*, 589 F.2d at 168 (determining that an option holder's payment when the option was acquired constituted consideration for the option itself, while the payment made when the option was exercised constituted consideration for the transaction that was the subject of the option).

## **CONCLUSION**

Plaintiffs respectfully ask the Court to reconsider the Opinion and Order for these reasons.


Dated: April 18, 2025                                            Respectfully submitted,

**SBAITI & COMPANY PLLC**

*/s/  Jonathan Bridges*
**Mazin A. Sbaiti**
New York  Bar No. 4339057
**Jonathan Bridges** (Admitted *Pro Hac Vice*)
Texas Bar No. 24028835
**Kevin N. Colquitt** (Admitted *Pro Hac Vice*)
Texas Bar No.  24072047
**Griffin S. Rubin** (Admitted *Pro Hac Vice*)
Texas Bar No. 24121809
2200 Ross Avenue – Suite 4900W
Dallas, TX  75201
T:  (214) 432-2899
F:  (214) 853-4367
E:  mas@sbaitilaw.com
      jeb@sbaitilaw.com
      knc@sbaitilaw.com
      gsr@sbaitilaw.com

*Counsel for Lead Plaintiffs*